UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TONIE L. HARRIS,

    Plaintiff,

    v.

ROSSI THOMAS, et al.,

    Defendants.

Case No. 15-cv-02510-JCS

**ORDER REGARDING SUFFICIENCY OF AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915**

Re: Dkt. No. 11

## I. INTRODUCTION

Plaintiff Tonie Harris, pro se, brings this action alleging sexual harassment and abuse, including rape, by her then supervisor Defendant Rossi Thomas while she was employed by Defendant United Airlines ("United"). The Court previously granted Harris's application to proceed in forma pauperis and dismissed her initial Complaint pursuant to 28 U.S.C. § 1915(e)(2) for failure to adequately state a claim on which relief could be granted. Harris has now filed an Amended Complaint (dkt. 11), asserting eleven claims under Title VII of the Civil Rights Act of 1964, California's Fair Employment and Housing Act ("FEHA"), and California common law. For the reasons stated below, Harris's FEHA claims (claims five through eight) are dismissed with leave to amend for failure to plead administrative exhaustion, but the Court finds her remaining claims adequate for the purpose of review under § 1915. **If Harris wishes to file a second amended complaint, she may do so no later than December 14, 2015.** If Harris declines to further amend those claims, the Court will instruct the United States Marshal to serve process as to the remaining claims on both Defendants pursuant to 28 U.S.C. § 1915(d).[1]

---

[1] Harris has consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Because no other party has been served or appeared, her consent is sufficient for the undersigned to evaluate her Amended Complaint.

## II. BACKGROUND

### A. Procedural History

Harris initiated this action by filing a Complaint under Title VII against United and Thomas. *See* Compl. (dkt. 1). The Court granted Harris's application to proceed in forma pauperis, reviewed her Complaint pursuant to 28 U.S.C. § 1915(e)(2), and dismissed the Title VII claim against Thomas with prejudice because that statute provides "no personal liability for employees, including supervisors." Order Dismissing Compl. (dkt. 10)[2] at 4 (quoting *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995)). The Court also dismissed Harris's claim against United for failure to include sufficient factual allegations to support a plausible entitlement to relief, but allowed leave to amend. *Id.* at 5−6. Harris filed her Amended Complaint on September 14, 2015.

### B. Allegations of the Amended Complaint

Harris's allegations are taken as true at the pleading stage. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The following paragraphs summarize her allegations but should not be construed as resolving any factual issues that might be disputed.

Harris was employed as a United customer service agent for fifteen years and performed competently. Am. Compl. ¶ 9. In the summer of 2012, she took a position as a personal assistant to Thomas, "a high ranking supervisor and regional director of United's customer service department." *Id.* ¶ 10.[3] In the months after Harris took that position, Thomas began to look at Harris inappropriately and told her "that he 'liked to party' and was a 'playboy.'" *Id.* ¶ 12. He later "began making moaning noises around Ms. Harris, as if he were moaning for or as a result of sexual activity." *Id.*

Harris "became aware of a steady stream of United female customer service employees who visited Thomas regularly." *Id.* ¶ 13. Thomas told Harris that he had sex with female employees and advanced their careers, as well as that "he built relationships with women in the

---

[2] *Harris v. Thomas*, No. 15-cv-02510-JCS, 2015 WL 4735179 (N.D. Cal. Aug. 10, 2015).
[3] The Amended Complaint uses all capital letters for the names of entities and individuals discussed therein. For ease of reading and consistency with the remainder of this Order, such capitalization is altered in quotations throughout this Order without further indication.

company, and that they became close friends after sex." *Id.* ¶¶ 13, 14.  He showed her "pictures of women in United's organizational chart whom he had helped at the company." *Id.* ¶ 14.  Harris "observed physical intimacy including touching and kissing" between Thomas and one employee, and "[a]t least one of Thomas's regular female visitors openly complained in front of Ms. Harris that Thomas had not done enough for her." *Id.* ¶ 13.  "Thomas's conduct became an 'open secret' among United employees and [was] known by United management," and Harris was aware of complaints regarding Thomas's sexual conduct.  *Id.*

Amy Pellatz, who is not a party to this case, was another United employee who served as Thomas's assistant and Harris's supervisor. *Id.* ¶ 15  Pellatz was aware of Thomas's conduct with other United employees and aided him "by, among other things, warning Thomas of inquiry and complaint [and] providing or insuring female employees special access to Thomas and his office." *Id.*  Pellatz "suggested that Ms. Harris would or should have sex with Thomas." *Id.* ¶ 14.  After Harris rejected Thomas's advances, and apparently spoke out against "the workplace disruption and risk inherent in" Thomas's liaisons with other female employees, Pellatz retaliated against Harris "by not assisting, verbally attacking, complaining about, turning the lights off on, attempting to suspend, and taking other hostile or adverse actions." *Id.* ¶ 15.  Thomas himself also "warned Ms. Harris that he could and would send her back to customer service." *Id.*

On or about May 31, 2013, Harris was making a breakfast smoothie for Thomas while Thomas prepared to leave for a flight home to his family in New Jersey. *Id.* ¶ 17.  Thomas told Harris that she looked nice, and then stated, "[t]he only way you are going to move up in this company is if you have sex." *Id.* (alteration in original).  Thomas then groped Harris's breasts, restrained her by grabbing her arm, removed her pants, and raped her.  *Id.*  He stopped when he was interrupted by his cell phone and went to his office to take the call.  *Id.*  "Thomas reemerged with his luggage, and blew Ms. Harris a kiss as he passed on his way out the door to catch his flight." *Id.*

Later in 2013, Thomas "continued assaulting Ms. Harris by touching her buttocks with his hand, or rubbing his genital region against her buttocks." *Id.* ¶ 18.  On one occasion in November of 2013, "Thomas directed Ms. Harris to suck one of the pickles [from a jar in the office] as if she

were performing fellatio." *Id.* ¶ 19. He then told her to perform fellatio on him, but Harris refused. *Id.*

Harris was traumatized by Thomas's treatment of her and feared losing her job if she reported it. *Id.* ¶ 20. "United's head of Human Relations in San Francisco" was Mike Cheeseman, a personal friend and ally of Thomas. *Id.* Harris nevertheless complained to him in the spring of 2013 and asked to be removed from working with Thomas, but Cheeseman refused to transfer her. *Id.* Another Human Relations employee at United, Carolyn White, later reached out to Harris and befriended her. *Id.* Harris tried to raise Thomas's improprieties with White, but White said she did not want to discuss Thomas and advised Harris that reporting such issues could affect her job. *Id.*

In January of 2014, "Thomas, Pellatz, Cheeseman, and/or White either individually or collectively told Ms. Harris . . . that she was no longer welcome back to her position as an assistant to Thomas, and Ms. Harris understood she was terminated." *Id.* ¶ 21. Around the same time—the exact sequence of events is not entirely clear from the Amended Complaint—Harris had begun seeing a therapist through United's Employee Assistance Program, and felt sufficiently empowered by therapy to report the harassment she experienced to United. *Id.* ¶ 20. Harris explains the results of that report as follows:

> After Ms. Harris' report of Thomas's harassment, United re-characterized her termination as a medical leave of absence, and offered her an inferior position in the same facility with or under Thomas. United did not remove Thomas from the facility and otherwise took no adverse action against Thomas as a result of Ms. Harris's complaint, at least to her knowledge. Ms. Harris's therapist, however, had placed Ms. Harris on disability largely because of her experience with Thomas, and United's offer of replacement employment was otherwise inadequate.

*Id.*

The Amended Complaint includes eleven claims, each against United, Thomas, or both of them (as well as unidentified Doe defendants). The first four claims invoke Title VII of the Civil Rights Act of 1964 against United and Doe defendants, and specifically allege: (1) sexual harassment creating a hostile work environment, *id.* ¶¶ 22−26; (2) quid pro quo sexual harassment, *id.* ¶¶ 27−31; (3) wrongful termination based on sex discrimination, *id.* ¶¶ 32−36; and (4)

retaliatory termination, *id.* ¶¶ 37−41. The fifth through eighth claims assert the same theories against United and Does, but under California's Fair Employment and Housing Act ("FEHA"). *See id.* ¶¶ 42−61. Harris brings her final three claims under California common law, and respectively asserts: (9) wrongful termination in violation of public policy, against United and Does; (10) intentional infliction of emotional distress, against United, Thomas, and Does; and (11) assault and battery, against Thomas. *Id.* ¶¶ 62−73.

## III.   ANALYSIS

### A.   Legal Standard

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, a court must screen the plaintiff's complaint and dismiss any claims that: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that lacks such statement fails to state a claim and must be dismissed.

In determining whether a plaintiff fails to state a claim, the court assumes that all factual allegations in the complaint are true. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pertinent question is whether the factual allegations, assumed to be true, "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). Thus, to meet this requirement, the complaint must be supported by factual allegations. *Id.*

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the

1   complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.
2   2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).
3   Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court
4   must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the
5   litigant uses the opportunity to amend effectively." *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d
6   1258, 1261 (9th Cir. 1992)). "Without the benefit of a statement of deficiencies, the pro se litigant
7   will likely repeat previous errors." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th
8   Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

**B.   Administrative Exhaustion and Dismissal of FEHA Claims**

Both Title VII and FEHA require a plaintiff to exhaust administrative remedies before filing a claim in court.

Under Title VII, a plaintiff usually must obtain a right-to-sue letter from the EEOC before bringing an action in court. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104–05 (9th Cir. 2008) (discussing this requirement and certain exceptions). Harris's initial Complaint attached a right-to-sue letter dated April 22, 2015. *See* Compl. at ECF p. 5. Her Amended Complaint, however, fails to include or discuss that letter. As a general rule, an amended complaint replaces the original complaint, which is "treated thereafter as non-existent." *Ferdik*, 963 F.2d at 1262 (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). But in the specific circumstances of this case, there would be little if any practical value in requiring Harris to amend her complaint to allege the existence of a document that already appears in the record. The Court therefore takes judicial notice of the right-to-sue letter included with Harris's original Complaint and deems it attached to the Amended Complaint. Taking that letter into account, the Court finds no basis to dismiss Harris's Title VII claims for failure to exhaust administrative remedies.

California law similarly requires that "the FEHA administrative process must be pursued with respect to the specific rights and remedies enumerated in the act," and constitutes "a precondition to bringing a civil suit on a statutory cause of action." *Rojo v. Kliger*, 52 Cal. 3d 65, 83, 84 (1990) (emphasis omitted). "Exhaustion in this context requires filing a written charge with [the California Department of Fair Employment and Housing ('DFEH')] within one year of the

alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue." *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001) (citing *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996)). "An EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of administrative remedies as to FEHA actions." *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1099 n.2 (1997) (citing *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1726 (1994)). There is no indication in Amended Complaint or elsewhere in the record that Harris received a right-to-sue letter from the DFEH. Harris's FEHA claims—specifically, the fifth, sixth, seventh, and eighth claims of her Amended Complaint—are therefore DISMISSED. Harris may file a second amended complaint to pursue these claims if she can allege facts to show that she complied with the FEHA administrative exhaustion requirement.

### C. Title VII Sexual Harassment

The first and second claims of Harris's Amended Complaint assert two forms of sexual harassment in violation of Title VII: hostile work environment and quid pro quo. As with her other Title VII claims, she brings these claims against United and unidentified Doe defendants, but not against Thomas. For the reasons discussed below, the Court finds both of these claims sufficient to proceed at this stage.

#### 1. Hostile Work Environment

"[S]exual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270−71 (2001) (per curiam) (citations and internal quotation marks omitted).

The "standards for judging hostility are sufficiently demanding to ensure that Title VII

does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (citation omitted).  Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id*. Although a workplace need not be "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers" to be actionable, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).  Further, "[t]o hold her employer liable for sexual harassment under Title VII, [a plaintiff] must show that she reasonably feared she would be subject to such misconduct in the future because the [employer] encouraged or tolerated [the] harassment." *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000).

> Because only the employer can change the terms and conditions of employment, an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship. By hypothesis, the employer will have had no advance notice and therefore cannot have sanctioned the harassment beforehand. And, if the employer takes appropriate corrective action, it will not have ratified the conduct. In such circumstances, it becomes difficult to say that a reasonable victim would feel that the terms and conditions of her employment have changed as a result of the misconduct.

*Id.* (considering sexual harassment claims under Title VII and California law).

"Physical sexual assault has routinely been prohibited as sexual harassment under Title VII." *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1065 (9th Cir. 2002) (collecting extensive authority). "[A] hostile environment exists when an employee can show (1) that he or she was subjected to . . . physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Ellison v. Brady*, 924 F.2d 872, 875−76 (9th Cir. 1991)).

Here, among other allegations, Harris alleges that her supervisor raped her.  Am. Compl. ¶ 17.  The Ninth Circuit has addressed sexual harassment claims based on rape:

> Rape is unquestionably among the most severe forms of sexual harassment. Being raped by a business associate, while on the job,

> irrevocably alters the conditions of the victim's work environment. It imports a profoundly serious level of abuse into a situation that, by law, must remain free of discrimination based on sex. Being raped is, at minimum, an act of discrimination based on sex. *See Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995) ("Just as every murder is also a battery, every rape committed in the employment setting is also discrimination based on the employee's sex."). Thus, the employer's reaction to a single serious episode may form the basis for a hostile work environment claim.

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967−68 (9th Cir. 2002).

Moreover, Harris's allegations go beyond "a single serious episode," *see id.* at 968, but rather describe an ongoing pattern of unwelcome sexual advances and contact by her supervisor, Thomas. *See* Am. Compl. at, *e.g.*, ¶¶ 14, 18, 19. Harris alleges that United was aware of Thomas's conduct with respect to other female employees. She also alleges that she reported Thomas's "improprieties" to Mike Cheeseman to no avail, and attempted to report Mr. Thomas to another United employee who "responded by stating that she did not want to talk about Thomas" and warned Harris that pursuing such complaints could jeopardize Harris's job. *Id.* ¶ 20. When she later reported the abuse "to United," United took no action against Thomas. *Id.* ¶¶ 20−21. The Court finds these allegations adequate to state a claim that Harris experienced unwelcome sexual contact and harassment sufficiently severe and pervasive to alter the conditions of her employment. *See Rene*, 305 F.3d at 1065.

### 2. Quid Pro Quo

A plaintiff bringing a Title VII claim based on quid pro quo harassment "must show that [a supervisor] 'explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct.' If a plaintiff is able to make such a showing, the employer is strictly liable for the supervisor's conduct." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (quoting *Nichols v. Frank*, 42 F.3d 503, 511 (9th Cir. 1994)) (citation omitted; second alteration in original). Harris alleges that immediately before Thomas raped her, Thomas stated, "[t]he only way you are going to move up in this company is if you have sex." Am. Compl. ¶ 17. The Court finds this allegation sufficient to state a claim.

### D. Title VII Employment Discrimination

Harris's third claim asserts that "Defendants United and Does actually or constructively

terminated Ms. Harris's employment on the basis of her sex and refusal to have sex with Thompson [sic, presumably referring to Thomas]." Am. Compl. ¶ 34.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "[H]ostility toward nonconformance with gender stereotypes also constitutes impermissible gender discrimination." *Latta v. Otter*, 771 F.3d 456, 486 (9th Cir. 2014) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir. 2001)). A plaintiff must generally present "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon [an] impermissible criterion." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) (quoting *Gay v. Waiters' Union*, 694 F.2d 531, 538 (9th Cir. 1982)). Discrimination need not be the only reason for the termination. "It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013).

A plaintiff may rely either on direct evidence that her termination was improperly motivated, or on circumstantial evidence by showing that: (1) she is a member of a protected class; (2) she was qualified for her position and performed adequately; (3) she experienced adverse employment action; and (4) similarly situated individuals not in her protected class were treated more favorably, or other circumstances give rise to an inference of discrimination. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). Although a plaintiff does not necessarily need to plead each of these elements specifically in her complaint, they nevertheless "help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see also Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 & n.2 (9th Cir. 2012).

As a starting point, it is not clear from the Amended Complaint whether Harris was actually terminated. She alleges that Thomas and/or other United employees told her "that she was not longer welcome back to her position as an assistant to Thomas," and that she "understood

she was terminated." Am. Compl. ¶ 21. Soon thereafter, "United re-characterized her termination as a medical leave of absence." *Id.* The Court need not resolve this issue at this stage, because the Amended Complaint includes sufficient factual allegations to support a claim based on constructive termination.[4]

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004) (citation omitted). Mere "evidence of transfer and demotion is insufficient," and the bar for such a claim is relatively high "because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). Ninth Circuit precedent holds, however, that "the plaintiff need not show that the employer subjectively intended to force the employee to resign." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (alteration in original); *see also Poland*, 494 F.3d at 1184 n.7.

Harris alleges that she experienced sexual assault and verbal sexual abuse at the hands of her supervisor, that she was told that complaining about the harassment could jeopardize her job, that soon after reporting abuse she was removed from her position and offered an inferior position under the same supervisor, and that United took no action against the allegedly abusive supervisor. Taken as a whole, the Court finds that these allegations describe conditions "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *See Suders*, 542 U.S. at 141. Moreover, giving Harris the benefit of the doubt and drawing all reasonable inferences in her favor, it is plausible to infer at this stage that her constructive discharge was

---

[4] The Court also need not address at this stage whether the Amended Complaint could be construed as stating a Title VII discrimination claim based on adverse employment actions other than termination, despite Harris explicitly framing the claim as based on actual or constructive termination. *See* Am. Compl. ¶ 34.

motivated at least in part by her sex or her failure to conform to a gender-based stereotype of female submission. The Court therefore finds the Amended Complaint sufficient to proceed on this claim.

### E. Title VII Retaliation

Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In general, employers' "unlawful employment practices" under Title VII encompass discrimination and harassment based on "race, color, religion, sex, or national origin." *See id.* § 2000e-2(a).

"To succeed on a retaliation claim, [a plaintiff] must first establish a prima facie case [by] demonstrat[ing] (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision." *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (citing *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513−14 (9th Cir. 1989)). The Ninth Circuit has long held that "a plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII," but instead "must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII." *Id.* Making an internal "complaint that a supervisor has violated Title VII may constitute protected activity for which the employer cannot lawfully retaliate." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009); *see also Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) ("We have held that when an employee protests the actions of a supervisor such opposition is a 'protected activity.'"). As for the causation element, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 133 S. Ct. at 2528.

As discussed above, Harris has alleged sufficient facts to state a claim that her supervisor violated Title VII. She alleges that she reported the alleged harassment to another supervisor (Cheeseman) and later to United. Am. Compl. ¶ 20. These allegations are sufficient to satisfy the

12

"protected activity" element of a retaliation claim. *See Go Daddy*, 581 F.3d at 963; *Trent*, 41 F.3d at 526. Harris has also adequately alleged adverse employment actions, including demotion and, as discussed above, constructive discharge. Taking into account Carolyn White's warning that reporting Thomas's misconduct could "adversely affect [Harris's] job," Am. Compl. ¶ 20, and allowing Harris the benefit of any doubt, *see Hebbe*, 627 F.3d at 342, the Court finds Harris's allegations adequate to support a plausible inference that those adverse actions were caused by a desire to retaliate for Harris reporting Thomas's alleged misconduct. The Court declines to dismiss Harris's Title VII retaliation claim.

### F. Wrongful Termination in Violation of Public Policy

Harris's ninth claim asserts wrongful termination in violation of public policy under California common law against United, based on the policies set forth in Title VII and FEHA. Am. Compl. ¶ 63. Although employment in California is generally at-will, California courts allow wrongful termination claims—often referred to as *Tameny* claims—on the condition that the claim "find[s] support in an important public policy based on a statutory or constitutional provision." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 79 (1998). A plaintiff may base a California wrongful termination claim on the public policy set forth in Title VII, yet still maintain it as a distinct state law claim. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 345 (9th Cir. 1996) (holding that such a claim does not give rise to federal subject matter jurisdiction so long as it is based at least in part on a state statute or constitution).[5] The prohibition of sexual abuse and gender discrimination in the workplace, recognized in both state and federal law, is an important public policy. For substantially the same reasons discussed above in the context of Harris's Title VII claims, the Court finds her Amended Complaint adequate to state a common law wrongful termination claim as well, and declines to dismiss this claim.

---

[5] Here, Harris has explicitly asserted several claims under federal law, specifically Title VII, and the Court therefore has subject matter jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367. *Rains*—a case in which the plaintiff did not bring a claim directly under Title VII—is cited here only to illustrate that a common law wrongful termination claim based on the policies of Title VII can be maintained separately from a direct Title VII claim.

### G. Intentional Infliction of Emotional Distress

The tenth claim of the Amended Complaint asserts intentional infliction of emotional distress against both United and Thomas.

> The elements of the tort of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." The defendant must have engaged in "conduct intended to inflict injury or engaged in with the realization that injury will result."
>
> It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.

*Chistensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209−10 (1982)) (citations and second-level internal quotation marks omitted).

Taking the allegations of the Amended Complaint as true, physically restraining and raping a subordinate employee certainly meets the threshold of outrageous conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *See id.*; *see also* Am. Compl. ¶ 17.  Harris alleges that the rape left her in "a state of disbelief and shock," Am. Compl. ¶ 17, and that she ultimately needed to see a therapist who "placed [her] on disability largely because of her experience with Thomas," *id.* ¶ 21.  These allegations are sufficient to support a claim that Harris suffered "severe or extreme emotional distress." *Christensen*, 54 Cal. 3d at 903. The Court is also satisfied that Harris has alleged conduct "directed at" her, and finds it reasonable to infer—again, taking Harris's allegations as true—that Thomas knew or should have known that his conduct would cause emotional distress.  The Court therefore declines to dismiss this claim.

### H. Assault and Battery

Harris's final claim is for common law "assault and battery," against Thomas.  Am. Compl. ¶¶ 70−73.  Under California law, "battery is any intentional, unlawful and harmful contact by one person with the person of another.  A harmful contact, intentionally done is the essence of a battery.  A contact is 'unlawful' if it is unconsented to." *Ashcraft v. King*, 228 Cal. App. 3d 604,

611 (1991) (citations omitted). Harris alleges, with specific factual detail, that Thomas restrained her by the arm and raped her. Am. Compl. ¶ 17. The Court declines to dismiss this claim.

## IV. CONCLUSION

For the reasons stated above, the Court declines to dismiss Harris's Amended Complaint under 28 U.S.C. § 1915(e)(2), except that Harris's FEHA claims (claims five through eight) are DISMISSED for failure to adequately allege compliance with California's administrative exhaustion requirement.

If Harris wishes to pursue those claims, she may file a second amended complaint **no later than December 14, 2015.** A second amended complaint must include the caption and civil case number used in this Order (15–cv–02510–JCS) and the words SECOND AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaint, any amended complaint must include all the claims Harris wishes to present and all of the defendants she wishes to sue. *See Ferdik*, 963 F.2d at 1262. Any amended complaint may not incorporate material from the prior complaint by reference and must address the deficiencies discussed above. Alternatively, if Harris declines to pursue her FEHA claims, she need not file a second amended complaint and may proceed on her Title VII and common law claims, and the Court will instruct the United States Marshal to serve process on Defendants.

Harris, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance. The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470–S on the 4th floor at 1301 Clay Street, Oakland, CA 94612. Appointments can be made by calling (415) 782–8982 or signing up in the appointment book located outside either office. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: November 12, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge